HUGH F. AND W. H. YOUNG v. B. H. EPPERSON, ADM'R.

Where the plaintiff, copying the form of a declaration in detinue, alleged the loan (there being in fact a loan) as of the proper date thereof, the same being more than two years before the institution of the suit, and then continuing to copy after the form of a declaration in detinue, alleged the demand and refusal to deliver as of the same day on which the loan was alleged to have been made, but afterwards filed an amended petition in which the demand and refusal were alleged of a later date, and the defendant read so much of the original petition, in support of the plea of the Statute of Limitations, whereupon the plaintiff proved, in rebuttal, without objection, that the actual demand and refusal took place within two years before the commencement of the suit, and thereupon the defendant offered to prove that there had been a previous demand and refusal, more than two years before the commencement of the suit, which the Court refused to permit, the judgment was reversed, on the ground that the proof should have been admitted under the peculiar circumstances of the case.

See this case as to admissions in pleading, where the pleadings show a tendency to fiction.

Where suit was commenced against a party in 1846, for the recovery of certain slaves, and the defendant resisted the suit, on the ground that the legal title to the slaves was placed in the plaintiff by the defendant solely for the purpose and to the end that the plaintiff might convey the same to the defendant's infant son, and also upon the plea of limitation, and in 1852 the said infant, by his guardian, intervened, and based his claim, in part, upon the Statute of Limitations, it was held that so much of said claim was properly stricken out, on motion.

It seems that in proper cases, an infant can claim by the Statute of Limitations, either affirmatively or negatively, as the case may be, and to the same extent that an adult may claim.

Where the Court instructed the jury that if a loan of money was intended, to the defendant, in the first place, and the bill of sale was taken merely as security for such loan, then it was to be regarded as a mortgage, and the mortgagee might assert his right of foreclosure, this Court said, it perhaps would have been expedient to explain more particularly, that the right of foreclosure did not give a right to recover the property, but only to have it sold for the satisfaction of the debt, and that if they believed, from the evidence, that a mortgage was intended, they should find that such was the fact.

Appeal from Red River. Suit commenced August 28, 1846, by T. J. W. Gibson against Hugh F. Young, for the recovery of certain slaves. The petition was in the form of a declara-

tion in detinue. It alleged the delivery of the slaves to the
defendant by the plaintiff, on the 31st of October, 1842, to be
re-delivered by the defendant, whenever he should be there-
unto afterwards requested; "yet the defendant, although he
was afterwards, to wit: on the day and year last aforesaid, at
the county, &c., requested by the said plaintiff so to do, hath
not as yet delivered," &c.

The defendant answered, alleging that his wife inherited the
slave Matilda, who was the mother of the others, from her
father; sold, with her children then born, by defendant's cred-
itors; defendant then lived in Arkansas; went to Missouri
and borrowed from his brothers-in-law, Lorenzo and William
R. Gibson, $2000, for which he executed his note 15th October,
1837, to be applied to re-purchase the negroes; the convey-
ance to be made to W. R. Gibson, who should hold the legal
title until the note was paid; that W. R. Gibson gave defend-
ant a power of attorney to purchase the negroes for him; that
defendant purchased them accordingly; that soon afterwards,
Edwin Gibson, another brother-in-law of defendant died, in-
testate, possessed of considerable property; that it was then
agreed by the payees of the said note, that defendant's wife's
share of said property would be about equal to said note; that
the same should be delivered up and cancelled, and that W. R.
Gibson should convey the negroes in controversy to defend-
ant's wife and her heirs, which should be the portion of her de-
ceased brother's estate; that before this agreement could be
carried into effct, W. R. Gibson and defendant's wife both
died, the latter leaving an only son, Wm. H. Young, "now"
about eight years of age; that to carry out the agreement, the
plaintiff and defendant, on the 31st October, 1842, agreed that
defendant should convey said negroes to plaintiff, alleging said
note as a consideration, and that plaintiff should afterwards
convey the same to the said William H. Young, which this de-
fendant on his part did, but that the plaintiff is fraudulently
endeavoring to evade the trust reposed in him—prayer that
plaintiff be compelled to convey said negroes to the said Wil-
liam H. Young, and for general relief.

Plaintiff filed a replication, in which he alleged that Edwin Gibson died insolvent; alleged that he had taken the note from L. Gibson, the survivor of L. & W. R. Gibson, in payment of a debt, at its full value; denied that W. R. Gibson had ever made any such agreement as was alleged; denied that plaintiff had received the conveyance upon any trust whatever, and continued : "Plaintiff admits that it was his desire, that said negroes should remain in the possession of the defendant during the life of the said Frances (plaintiff's sister;) and alleges that any and all promises at the time of said sale of said negroes, was entirely gratuitous and without the least consideration, and therefore this plaintiff should not be compelled to re-convey said negroes, as is required by defendant in his answer. Plaintiff further states that if there was ever a conversation between defendant and plaintiff in relation to the conveyance of said negroes to said William H., it was in the year 1843, and that plaintiff may have said that if the negroes were given into his, plaintiff's possession, he might make to said William a present of said negroes, or a portion of them ; but that if plaintiff had intended so to do, defendant deprived him of the power, by rejecting such proposition absolutely, and keeping and detaining said negroes in his own possession ; therefore, if said promise was made, it is not binding," &c. This replication was sworn to by the plaintiff.

In 1849, death of plaintiff suggested, his administrator, Benjamin H. Epperson, substituted.

The case was tried several times, and was twice appealed. On the 29th of November, 1852, William H. Young, by his guardian, Amos Morrill, intervened, alleging "that in the year 1842, his mother, Frances H. Young, departed this life intestate, seized and possessed, as of her own property, of the negroes in controversy, claiming the same openly and notoriously as her own property, adversely to the claim or claims of any and every other person, and especially against the claim of the plaintiff or of her husband, Hugh F. Young ; that this defendant and interpleader is the only son and heir," &c. "Where-

fore this defendant, by his guardian, especially pleads the Act of Limitations as a bar to the plaintiff's cause of action, and requests judgment for costs, &c., and that he be quieted in the possession of said negroes against the claim of said Hugh F. Young, as well as of plaintiff."

Same day defendant H. F. Young amended by pleading adverse possession of the slaves, for more than two years previous to the institution of this suit.

December 7th, 1852, plaintiff filed " his amended petition," in which he alleged the ownership of the negroes in his intestate, the delivery of them to the defendant on the 31st of October, 1842, to be re-delivered when requested, and the request and refusal to deliver, on the 10th day of February, 1846, the description and value of the negroes, and prayer for judgment for the negroes, &c.

The plaintiff also filed a motion to strike out that portion of the intervention of Wm. H. Young, which sets up a claim to the negroes sued for, under the law of limitations; which motion was sustained by the Court.

The facts were as follows : Plaintiff introduced the bill of sale of October 31st, 1842, from defendant Hugh F. Young to T. J. W. Gibson, the plaintiff's intestate; the value of each negro was agreed on.

Defendant read as testimony the original petition of plaintiff, and proved by three intelligent and respectable witnesses, that he had been living at Clarksville, Red River county, Texas, since 1842, claiming the negroes in controversy as the property of his wife, while she was alive, and after her death, as the property of her son, William H. Young, and that the witnesses never heard of any other claim; that the defendant Hugh F. Young had frequently hired out the negroes, as his son's property, more than two years previous to the institution of this suit. One of the witnesses testified that in September, 1843, he obtained a judgment, as attorney, against Hugh F. Young, for $900, and directed these negroes to be levied on immediately afterwards, when the witness, upon enquiry, as-

certained that the defendant, during all the time he had been in Texas, set up no claim to the negroes, except for his wife and child, and that the community generally regarded the negroes as the property of said Hugh F. Young's wife and child, and that although witness made all enquiry as to the ownership of the negroes, he never heard of the claim of plaintiff till the institution of this suit, and the only reason why witness did not cause the negroes to be levied on and sold, was, because they were supposed to be the property of the wife and child.

Plaintiff then introduced the testimony of L. Gibson, as follows: The negro woman, Matilda, was inherited by the wife of defendant, from her father's estate, in the State of Tennessee; defendant and wife removed from Tennessee to Missouri; defendant became embarrassed; the negro woman and several of her children were sold at Sheriff's sale; defendant visited Arkansas for the purpose of obtaining money from L. & W. R. Gibson, to redeem the negroes; L. & W. R. Gibson, who were brothers of defendant's wife, loaned defendant $2000 to redeem said negroes, for which they took defendant's note, with the understanding that the title to the negroes should be taken in the name of W. R. Gibson, and that as an act of kindness to the sister, they permitted the negroes to remain in possession of defendant, with the understanding that defendant might retain them, upon paying said note; sometime in the year 1841 or 1842, defendant moved to Texas, bringing with him the said negroes; L. Gibson, the surviving partner of the firm of L. & W. R. Gibson, endorsed said note to T. J. W. Gibson, and said Thomas, in 1842, came to Texas and took from defendant a bill of sale for said negro woman and her children then born, in consideration of which bill of sale, Thomas delivered to defendant said note for two thousand dollars; and defendant's wife being in delicate health, he left said negroes in defendant's possession, for the benefit of his sister, until such time as said Thomas might call for them; defendant's wife died in 1842 or 1843, and Thomas called on defendant for the possession of said negroes in the Fall of 1844, when defendant

refused to deliver them; said Thomas was not in Texas in 1843.

The defendant then proposed to read the testimony of Mrs. Rogers, " to prove when the demand of the negroes was made of defendant, to which the plaintiff objected, which objection was sustained," &c.

The Court charged the jury that the case had been narrowed down by the decisions of the Supreme Court, to a question of the Statute of Limitations; charged at some length on the Statute, particularly as to adverse possession by a trustee. The Court then continued : " It is useless for the jury to enquire into the possession of William H. Young ; nor is it necessary that I should charge you whether the Statute of Limitations constitutes an affirmative or a negative title. I have already decided in the progress of this cause, upon reasons which appear still satisfactory to my mind, that a minor cannot acquire property by virtue of the Statute of Limitations, and accordingly ordered that part of the plea to be stricken out. The Court also instructed the jury, as stated in the Opinion, respecting the right of a mortgagee to foreclose.

*Morrill & Dickson*, for appellants.

*Young & Morgan*, for appellee.

HEMPHILL, CH. J. This case has been twice before this Court. (2 Tex. R. 417 ; 8 Id. 135.) It appears now on different grounds from any assumed at the former trials. After the cause was remanded a second time, the defendant pleaded the Statute of Limitations, and his infant son, William H. Young, intervened and pleaded property in himself, through his mother, to the negroes in controversy, and set up also the Statute of Limitations. His plea of the Statute was, on exception, stricken out; and on the trial, judgment went for plaintiff.

Various errors have been assigned. Of these I shall first

consider the error which is the second in the order of assign-
ment, viz: that the Court erred in excluding the testimony of
Mrs. Rogers. The defendant insists that he was entitled to
the benefit of this testimony, though not offered until the plain-
tiff had closed his rebutting testimony, on the ground of sur-
prise at the variance between the rebutting proof of plaintiff
and his admissions in the pleadings, as to the time of demand
by plaintiff, of the slaves.

The plaintiff, in the petition, had literally pursued the usual
form of a declaration in detinue, with all its fictions and ab-
surdities. Although, from the plaintiff's replication, which
should have been incorporated, by amendment, with the peti-
tion, it appears that the slaves were loaned to the defendant,
to be re-delivered on request ; and although it would be quite
absurd for the plaintiff to demand a return of the slaves on the
day he had loaned them, yet such is the usual form of allega-
tion in detinue. The pleadings, under our system should state
facts truly, and the plaintiff made some attempt at this, by
stating the time of delivery to the defendant, as it existed,
dating it from the bill of sale. His misfortune was in attempt-
ing to commingle the fictions of the Common Law system of
pleading, with the actual facts as they should be averred under
our system. It would have been better to pursue the one or
the other—either state the facts as they existed or were sus-
ceptible of proof, or state the whole transaction fictitiously, not
only the time of the demand by plaintiff and refusal by defend-
ant, but also the time of the original delivery to defendant, so
as to bring the whole within the Statute of Limitations. But
by stating the actual fact as to the time of delivery to defend-
ant, and then by following the fictions of form stating the de-
mand and refusal as accurring also on the same day, the plain-
tiff shows by his own averments, that his cause of action was
barred by the Statute, as the action was not commenced for
some years afterwards. It would, however, be somewhat too
severe, to condemn a party to the loss of his rights, for at-
tempting to pursue an incongruous fiction, and following that

only in the part which operated to his prejudice ; yet, although the Court would allow him to establish, by proof, the time of demand and refusal, so as to bring his case out of the bar of the Statute, his admission by his pleading would relieve the defendant from the necessity of offering proof in the first place to sustain the plea of limitation. The demand and refusal had been averred to be several years before the commencement of the action, sufficient to operate as a bar, and until the plaintiff offered proof that in fact the demand had not been made, or in other words, that the adverse possession had not commenced at the time averred, but afterwards, it was not incumbent on the defendant to adduce his proof.

I have sufficiently commented on the absurdity of alleging the loan of property and demanding its return on the same day, and it may be said that the defendant should not have relied on any such absurdity, but should have offered proof as to the actual time of demand, without waiting to ascertain whether the plaintiff would attempt to establish it by evidence. But, if the averment of the original petition, as to the demand, could be disposed of in this way, yet, from the replication, as it is called, it appears that some arrangement was attempted between the parties in 1843, the plaintiff promising to make certain dispositions of the slaves, provided they were restored to his possession, and it is averred that such proposition was rejected by defendant's keeping and detaining such property in his possession. This may not be equivalent to such demand and unequivocal refusal, as would be necessary to show adverse possession in the defendant. This, if the facts were proved, would be for the jury to determine ; but the defendant may have believed such averment to be an admission that he had asserted property, and had repelled absolutely and unconditionally the claim of the plaintiff ; and, with this impression, he had a right to decline proof of the time of demand, until the plaintiff had shown that his own averments were not true in fact, but that the demand was of a subsequent date.

This proof was not offered by plaintiff at the opening of the

cause. It was brought out in the rebutting testimony, and it then appeared that the demand was not made until the Fall of 1844, less than two years before the commencement of the action, and that the plaintiff, now deceased, was not in Texas in 1843. This was contradictory of the admissions of plaintiff, in his pleadings, relative to the demand in 1842 and 1843, on which the defendant had relied; and he proposed, in answer, to introduce the testimony of Mrs. Rogers, to show the time of demand. What she would have proved does not precisely appear from the bill of exceptions. But the defendant, in his brief, says that she would prove that the plaintiff, deceased, was in person in Texas and made the demand in 1843. The evidence was refused, not on the ground of immateriality, but, as may be inferred, because it was offered after the close of the rebutting proof. If necessary to the ends of justice, the evidence should have been admitted, even at that stage of the trial; and, under the peculiar circumstances of the case, the Court erred in not allowing it to be received.

How far admissions in pleadings, relative to demands, should conclude the plaintiff, when the time or other circumstances of the demand, as they are stated by the plaintiff, operate to the benefit of the defendant, need not be discussed. They are often loosely made; but they may frequently be the only proof on which the defendant can rely, as in case of verbal demands, when no witnesses were present, at least none on behalf of defendant. But this is not the point immediately for consideration; for, whatever may be the exact force of admissions, especially when the pleadings show a tendency to fiction, they are of sufficient weight to allow the defendant a fair opportunity of proving the real state of the facts, and this is the extent of our decision on this assignment.

Another supposed error is in excluding the plea of the Statute of Limitations from the answer of intervention of William H. Young, the minor.

What purpose was to be effected by setting up a title, by Statute of Limitations, in the son, Wm. H. Young, it is difficult

to perceive. He claimed through his mother, and if she owned these slaves at the time of her death, he did not need the protection of the Statute ; for it could not run against him during minority ; at least, there are no circumstances shown in this case, in which the Statute might run against a minor. If the benefit of the Statute was to be claimed for the minor, on such facts as were proved by the witnesses, viz : that the defendant, Hugh F. Young, had acknowledged by words and acts that the slaves were the property of his wife, and of the minor, this must be acknowledged as one of the most ingenious schemes to transmute property and defraud generally, yet devised. An insolvent debtor has but to sell his property to a fraudulent vendee, or to some indulgent creditor, who will, from kindness, permit the property to remain with him, and then have the bill of sale duly recorded, as was the case in this instance. The bill of sale will deter creditors from asserting their rights, and the debtor by giving out at the proper places that the property belongs to his wife or child, might, at the end of two years after adverse possession really commenced, defeat the claim of his friend, who had gratuitously loaned him the property, and at the same time he would defeat his creditors, because the property would not, by this adverse possession, be revested in him, but in his wife or child.

Such expedients ought not and cannot receive any countenance. If the rights of persons, who, from mere benevolence, loan property, are not to be particularly respected, public policy demands that the rights of creditors should be regarded, and a device, equally well adapted to strip a friend or fleece a creditor, savors too much of fraud, to be tolerated. Constructive gifts to wives or children, at best, or under any circumstances, are not to be treated with special favor. They can easily be converted into instruments of the greatest injustice to the unwary, who rely in their transactions, upon the maxim that possession gives property.

Upon the whole there does not appear to be sufficient reason for reversing the action of the Court in excluding the infant's

plea of the Statute of Limitations. No doubt, in proper cases, an infant can claim by the Statute of Limitations, either affirmatively or negatively, as the case may be, and to the same extent that an adult may claim. But for what purpose set it up in this case? If title can be claimed at all, against the plaintiff, by adverse possession, it can be claimed by the defendant, Hugh F. Young, whether he set it up for himself, his wife or his child.

The Court instructed the jury, that if a loan of money was intended, to the defendant, in the first place, and the bill of sale was taken merely as security for such loan, then it was to be regarded as a mortgage, and the mortgagee might assert his right of foreclosure. It perhaps would have been expedient to explain more particularly, that the right of foreclosure did not give a right to recover the property, but only to have it sold for the satisfaction of the debt; and that if they believed from the evidence, that a mortgage was intended, they should find that such was the fact. Judgment reversed and cause remanded.

Reversed and remanded.